## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-CV-4169-JPG |
| ) | |
| ARCHIE D. THOMPSON, JR., ) | |
| ) | |
| Defendant. ) | |
| ) | |

### MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on the Government's motion for summary judgment (Doc. 3), to which defendant has responded (Doc. 5). The United States of America brought this suit against Archie D. Thompson, Jr., who appears *pro se*, alleging Thompson defaulted on a student loan insured by the United States. The United States seeks judgment in the amount of $49,870.91 plus interest pursuant to 28 U.S.C. § 1961. The United States also seeks costs in the amount of $250.00, pursuant to 28 U.S.C. § 2412(a)(2). For the following reasons, the Court will **GRANT** the Government's motion.

### BACKGROUND

**I.    Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.,*

211 F.3d 392, 396 (7th Cir. 2000).  The Court construes all facts in the light most favorable to the nonmoving party and draws all justifiable inferences in the nonmoving party's favor.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Spath,* 211 F.3d at 396.

The moving party has the burden of establishing that there is no genuine issue of material fact.  *Celotex Corp.,* 477 U.S. at 323.  If it meets this burden, the nonmoving party must set forth facts that demonstrate the existence of a genuine issue of material fact.  Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322-26; *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir. 1996).  The nonmoving party must do more than cast "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).  Rather, the nonmoving party must demonstrate to the Court that the evidence is such that a reasonable jury could return a verdict in his favor.  *Anderson,* 477 U.S. at 248; *Insolia v. Phillip Morris Inc.,* 216 F.3d 596 (7th Cir. 2000).  Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment.  *Anderson,* 477 U.S. at 248-50.

**II.      Facts**

Taken in the light most favorable to the defendant, the facts are as follows.  In 1989, Archie D. Thompson, Jr. (Thompson), was a student in the Podiatry School at Barry University.  On September 8, 1989, he executed a promissory note for a Health Education Assistance Loan (HEAL) from Chase Manhattan Bank (Chase) in the amount of $17,990.00.[1]  HEAL is a federal student loan insurance program, administered by the Department of Health and Human Services (HHS), for

---

[1]The amount of the Promissory Note was $20,000.00.  However, only $17,990.00 was approved.

qualified students in health-related graduate programs. 42 U.S.C. § 292 (2000). Students obtain HEAL loans from private lenders. 42 C.F.R. § 60(b). By taking a HEAL loan, the borrower is obligated to repay the lender or holder of the note the full amount of the money borrowed, plus all interest which accrues on the loan. 42 C.F.R. § 60(a). In the note he signed, Thompson agreed to repay the loan beginning the first day of the tenth month after ceasing to be a full-time student (Doc.1 Ex. A). All HEAL borrowers are given a nine-month grace period during which they are not required to make repayments. 42 C.F.R. § 60.11(a)(1) (2006). In the Fall of 1989 and the Spring of 1990, Chase disbursed the loan funds to Barry University. At some point, Chase sold and assigned the note to the Student Loan Marketing Association (SLMA).

Thompson left Barry University.[2] The holder of the note granted Thompson forbearance from paying on the HEAL loan from October 28, 1991 though June 28, 1993. He was to begin repaying the loan July 28, 1993. He made no payments. On August 21, 1996, Thompson filed for Chapter 13 bankruptcy in the Southern District of Illinois. As a result of Thompson's bankruptcy petition, SLMA filed an insurance claim with HHS as provided in 42 C.F.R. § 60.1(c). On October 18, 1996, HHS paid the claim for $29,782.00 and SLMA assigned the note to it. At that point, the United States Government became Thompson's direct creditor. 42 C.F.R. § 60.1(c).

Thompson's bankruptcy was discharged on August 22, 2001. However, HEAL loans cannot be discharged in bankruptcy unless certain conditions, which do not apply here, are met. 42 C.F.R.

---

[2]Thompson asserts he was compelled to leave school because Chase erroneously claimed he was delinquent in repayment of the HEAL loan in the Spring of 1990 and placed the loan in default that summer. Because Thompson's record contained a default of a HEAL loan, Thompson was unable to receive further financial aid and had to leave school. However, because Thompson has submitted no evidence in support of this claim, the Court cannot consider it for purposes of this motion.

§ 60.8(b)(5).  HHS notified Thompson, in a letter dated October 22, 2002, that although payments on his HEAL debt had been suspended during his bankruptcy proceedings, his debt was not subject to cancellation by bankruptcy discharge.  HHS provided Thompson with instructions for entering into a repayment agreement with notice that he must complete and return it within 30 days, along with a good faith payment.  Thompson did not comply.

On December 29, 2002, Thompson again filed for Chapter 13 bankruptcy in the Southern District of Illinois.  This time, the bankruptcy action was dismissed.  HHS again notified Thompson, in a letter dated July 12, 2004, that although payments on his HEAL debt had been suspended during his bankruptcy proceedings, his debt was not subject to cancellation by bankruptcy discharge.  Again, HHS provided Thompson with instructions for entering into a repayment agreement with notice that he must complete and return it within 30 days, along with a good faith payment.  Again, Thompson did not comply.

Between October 1, 2004 and April 11, 2005, HHS contacted Thompson by mail several times in an effort to collect the debt or arrange a repayment schedule.  Finally, on May 9, 2005, Thompson wrote the Debt Management Branch of HHS requesting forbearance on his HEAL loan. (Doc. 2 at 7).  He also requested information on a settlement.  *Id.*  In a letter dated January 20, 2006 the Department of Justice (DOJ) refused a $10,000.00 settlement offer from Thompson, but indicated it would accept $30,000.00 in settlement (Doc. 5 at 4).  DOJ also indicated it would reconsider the $10,000.00 offer if Thompson provided additional information and documentation. *Id.*  As of March 3, 2006 Thompson's HEAL debt had swelled to $51,868.21 (Doc. 4 Ex. B). Thompson has made payments on his HEAL loan amounting to $2,357.92 (Doc. 4 Ex. A).

## ANALYSIS

I.   **Recovery on a Promissory Note**

In order to recover on a promissory note, the government must show 1) it is the holder of the note; 2) the defendant signed the note, and 3) the note has not been satisfied. *Bank of N.C. v. Rock Island Bank,* 630 F.2d 1243, 1247 (7th Cir. 1980); *United States v. Lawrence,* 276 F.3d 193, 197 (5th Cir. 2001). "If the holder introduces the instrument and the signatures are not disputed, the holder is entitled to recover unless a defense to the instrument is established." *Bank of N.C.,* 630 F.2d at 1247.

Thompson admits he signed the promissory note (Doc.5 at 1). The United States is undisputedly the holder of the note as a result of Thompson's bankruptcy (Doc.1 Ex. A). Further, Thompson does not assert that he has repaid the loan, or that the government's calculations as to the amount owed are incorrect.

II.   **Asserted Defenses**

Thompson contends he should not have to pay as much as the government claims he owes because 1) the lenders and holders of his loan have not acted in good faith in resolving the debt; 2) he did not receive all instructions from the lenders and holders of this debt, nor did he receive responses to his inquiries and requests to resolve the debt, and 3) the original lender of the HEAL loan, Chase, placed his loan in default while he was still a full-time student at Barry University. Because "a HEAL loan is not a negotiable instrument, and a subsequent holder is not a holder in due course," 42 C.F.R. § 60.38(b), if Thompson could assert a valid defense to a demand for repayment from Chase, he could also assert that defense against the government. *Id*. However, here Thompson has not asserted a valid defense to the demand for repayment of his HEAL loan.

### A. Lack of Good Faith

Thompson claims the lender and holders of the HEAL loan did not show good faith in negotiations with him. However, there is no evidence of any such lack of good faith. Thompson asserts the government should have accepted "a settlement more in line with the actual amount borrowed" in order to resolve this debt (Doc. 2 at 1). It is true the amount that Thompson originally borrowed is considerably less than the amount he now owes. However, this is due to the fact that in 17 years, Thompson has made payments amounting to only $2,357.92. Thompson also attached a letter from DOJ refusing a settlement of $10,000.00 as evidence of the government's lack of good faith (Doc.5 at 4). However, Thompson's offer of $10,000.00 was less than the original principle on the HEAL loan. Furthermore, the DOJ letter states the government would accept a $30,000.00 settlement with no documentation or a lesser settlement offer with supporting documentation. Accordingly, there is no evidence from which a reasonable jury could conclude that the United States or other holders of Thompson's HEAL loan did not act in good faith.

### B. Lack of Response to Inquiries

Thompson also claims that he "did not receive all instructions from and responses to [his] inquiries and requests to resolve this matter" from the holders of this debt (Doc. 5 at 2). Thompson gives no indication as to what information he sought and did not receive, or as to why such information would be relevant in the instant dispute. In short, Thompson has submitted no evidence that does anything more than cast "some metaphysical doubt as to the material facts."

### C. Breach of Contract by Chase

Finally, Thompson asserts that he should not have to pay off the HEAL loan because his original lender, Chase, placed the loan in default before it came due, in breach of contract on the

promissory note and in violation of the HEAL loan regulations.

Thompson has presented no evidence to support his contention that Chase breached the promissory note. The only evidence submitted by Thompson is a copy of a civil complaint against Chase filed by Thompson in state court in Florida (Doc. 5 at 5-13). The complaint by itself is insufficient to establish the assertions therein, and therefore cannot be used to defeat summary judgment. *Anderson,* 477 U.S. at 249-250.

## CONCLUSION

In conclusion, the Court finds that there is no evidence from which a reasonable jury could return a verdict in favor of Thompson. The government has produced evidence establishing Thompson signed the promissory note, the United States is now the holder of the note, and the note has not been satisfied. Thompson raised defenses to repayment but did not support those defenses with probative evidence. Therefore, the United States' motion for summary judgment (Doc. 3) is **GRANTED**. The Court enters judgment against Archie D. Thompson, Jr. in the amount of $50,120.91. Interest on the judgment shall be paid as prescribed in 28 U.S.C. § 1961 until the judgment is paid in full. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**Dated: June 14, 2006.**

                                               s/ J. Phil Gilbert
                                               **J. PHIL GILBERT**
                                               **U.S. District Judge**